[Civ. No. 43773. First Dist., Div. Two. Oct. 16, 1978.]

LEONARD C. HALLENDORF, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
ROBERT T. PFLIBSEN, Real Party in Interest.

**COUNSEL**

Casey & Casey and James N. Casey for Petitioner.

No appearance for Respondent.

Gassett, Perry, Frank & Bondelie, William L. Reagan and John S. Burton for Real Party in Interest.

**OPINION**

**ROUSE, J.**—Petitioner, plaintiff in a personal injury action, seeks relief by extraordinary writ after respondent court granted a defense motion to compel further answers to interrogatories and to compel compliance with a subpoena duces tecum requiring the production of medical records. We issued an alternative writ, because it appeared that the court's order violated principles announced in *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766], in that the order required petitioner

to disclose his entire lifetime medical history. The *Britt* decision was filed on March 27, 1978, shortly after the date of respondent court's order.

▉ Petitioner commenced an action for damages arising from a collision with the automobile of real party in interest, defendant in the action. He seeks general damages, medical and related expenses, property damage and loss of earnings. Petitioner alleges that at the time of the collision he was gainfully employed as a physician-surgeon, earning an average monthly salary in excess of $2,840, and that as a proximate result of the negligence of the defendant he has been and will be prevented from attending to his usual occupation. It subsequently developed that petitioner is claiming that injuries to his arm and shoulder sustained in the accident forced him to retire three and one-half years early from his occupation as a physician-surgeon at Kaiser-Permanente Hospital and that by reason thereof he has sustained a wage loss in the amount of $101,500.

In the course of discovery, real party propounded interrogatories to petitioner requiring him to provide information about medical problems other than those caused or affected by the accident that he had *either before or since* the accident; to list the names of *all* doctors examining or treating him for *any medical condition before the accident*; and to list *all* hospitals or institutions in which he had been, either as an in-patient or out-patient, during his entire lifetime. Petitioner refused to respond to these requests, claiming that the information sought was unrelated to the injuries complained of in the action.[1] Petitioner also instructed his physician, Dr. Hills, not to comply with a subpoena duces tecum which sought all medical records in the possession of Dr. Hills, who had treated petitioner for 20 years. Petitioner invoked the physician-patient privilege, and asserted that Dr. Hills had never treated him for the condition and injuries complained of in the action. Real party moved to compel further responses to the interrogatories and to compel compliance with the subpoena duces tecum, contending that petitioner, by bringing the lawsuit, had placed his physical and emotional conditions in issue and thereby waived his physician-patient privilege. In an affidavit in support of the motion, real party's attorney alleged, on information and belief, that medical records subpoenaed from the Kaiser-Permanente Hospital indicated that Dr. Hills had treated petitioner over a long period of time

---

[1]Petitioner did respond that he was treated for bursitis in 1970. This treatment, of course, was related to the injury for which recovery is sought. (*In re Lifschutz* (1970) 2 Cal.3d 415, 434, fn. 19 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 864, fn. 9 [143 Cal.Rptr. 695, 574 P.2d 766].)

for a "history of hypertension and a serious illness which drastically affected the plaintiff's ability to practice medicine." Real party contended that information concerning prior physical and emotional conditions which affected petitioner's ability to practice medicine and prior treatment by Dr. Hills for those conditions was necessary "so that the defendant can ascertain if there were other medical and/or emotional reasons why the plaintiff took an early retirement from Kaiser and has claimed to have suffered his $101,500.00 wage loss."

Petitioner opposed the motion, contending that he had not, by bringing the action, tendered as an issue his entire medical history; he had tendered only the issue of the injuries to his arm and shoulder and the effect of those injuries upon his ability to perform his occupation as a surgeon; and that the discovery sought exceeded that which was permissible and should be refused, pursuant to the physician-patient privilege. In an affidavit in opposition to the motion, petitioner sought to show that certain treatment he had received in the past was not directly related to the issues raised in the action. Petitioner admitted that he had been treated for hypertension, and that the condition had been controlled by medication since 1957. The "serious illness" occurred in 1962 and did cause him to refrain from medical practice for two years. That condition, too, was controlled with medication, and petitioner had resumed his medical practice in 1964 and had been continuously engaged in such practice until his forced retirement. In 1967, he became employed by Kaiser, assigned to the surgical section, and that employment lasted until July 1, 1977. Petitioner averred that neither of the foregoing conditions involved arm and/or shoulder injuries and that at no time since he resumed his practice had the conditions referred to hampered his ability to perform as a physician.

In *Britt v. Superior Court, supra,* 20 Cal.3d 844, the court addressed itself to a discovery order which permitted defendants to inquire without limitation into each plaintiff's lifetime medical history. In *Britt,* the interrogatories demanded of plaintiffs a complete account of their entire medical history, encompassing all illnesses, physical injuries, and mental or emotional disturbances for which plaintiffs sought treatment at any time during their lives. (P. 850.) Plaintiffs in *Britt,* as here, objected to the trial court's unlimited order which required them to comply with defendant's request for information related to *all* past medical conditions without regard to whether such conditions had any bearing on the litigation being conducted. Defendants argued, as real party does here, that the broad discovery order properly afforded it the opportunity to

determine for itself whether the injuries, which plaintiffs asserted were caused by defendants' airport operations, actually arose from other medical conditions.

The court in *Britt* reaffirmed prior decisions placing a narrow interpretation on the scope of the exception to the physician-patient and psychotherapist-patient privileges contained in sections 996 and 1016 of the Evidence Code. Although the court agreed that in seeking recovery for physical and mental injuries, plaintiffs had unquestionably waived their physician-patient and psychotherapist-patient privileges as to all information concerning the medical conditions which they had put in issue, the court concluded that past cases made it clear that "such waiver extends only to information relating to the *medical conditions in question*, and does not automatically open *all* of a plaintiff's past medical history to scrutiny." (P. 849.)

Here, as in *Britt*, the discovery authorized by the challenged order is clearly overbroad. That aspect of the challenged order which requires petitioner to respond to interrogatories compels petitioner to reveal his entire lifetime history, and the enforcement of the subpoena duces tecum will require Dr. Hills to disclose all treatment rendered to petitioner over a period of 20 years without limitation to the medical condition which petitioner has put in issue. We conclude, therefore, that petitioner is entitled to relief by extraordinary writ. We recognize, however, that the showing made in support of the discovery sought by real party understandably did not address the later-announced *Britt* standards. Our disposition of this matter, therefore, does not preclude real party from framing narrower, more precisely tailored interrogatories or subpoenas which do not improperly impinge on privileged information (see *Britt* v. *Superior Court, supra*, 20 Cal.3d at pp. 862-863, fn. 7).

Let a peremptory writ of prohibition issue restraining respondent court from enforcing its order.

Taylor, P. J., concurred.

**KANE, J.**—I dissent. The majority's reliance on *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766] is not misplaced; it is, however, a manifestation of the old adage "bad cases make bad law." And while a good pragmatic argument can be made to distinguish the instant case from *Britt* on the ground that *Britt* involves a mixed bag of

personal injury, mental distress, and property damage claims by a multitude of claimants, the real vice of *Britt* is that it is contrary to clear legislative mandate and sound public policy. In its ultimate application, moreover, *Britt* is a vehicle for the perpetration of injustice and inequity upon those persons and entities who are sued in personal injury actions.

*Britt* has established a double standard of the right to discovery—one for plaintiffs and a more limited one for defendants. In reaching this patently discriminatory result, the majority in *Britt* has not seen fit to explain how it got there except by the exercise of judicial fiat. Or, as Justice Richardson so poignantly expressed it in his dissent, "Initially, I note that the majority, inexplicably, has either forgotten or has chosen to ignore what I had always considered to be our most definitive expression in the area of civil discovery. In 1961 through the careful analysis of Justice Peters, in *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266], we examined in very considerable depth the Discovery Act of 1957 (Code Civ. Proc., § 2016 et seq.). Under 79 headnotes we expressed the expansive views of this court on the legislative intent behind the act, compared new and old law, considered the nature of the trial court's discretion, conducted a careful procedural review and scrutinized many matters related to discovery generally.

"In the 20 years since adoption of the act *Greyhound* has been considered by bench and bar as a prime authority in the interpretation of the act and the principles and policies on discovery matters. In considering the trial court's function we noted in relevant part: 'It is apparent, however, that each exercise of discretion will occur under a differing set of facts, and that each case must, of necessity, be decided in light of those particular facts. But it is possible to lay down certain general rules based upon the nature and purpose of the discovery statutes which can be used in determining the proper exercise of discretion in all discovery cases. To constitute a proper exercise of discretion, the factual determination of the trial court should clearly and unequivocally be based upon the following legal concepts: [¶] 1. The legislative purposes [*to give greater assistance to the parties in ascertaining the truth and checking and preventing perjury; provide an effective means of detecting and exposing false, fraudulent and sham claims* and defenses; make available in a simple, convenient and inexpensive way, facts which otherwise could not be proved except with great difficulty; expedite litigation; simplify and narrow the issues; and expedite and facilitate both preparation and trial] are not to be subverted under the guise of the exercise of discretion; [¶] 2. *Those purposes are to be given effect rather*

*than thwarted, to the end that discovery is encouraged;* . . .' (Pp. 382-383, italics added.) [A portion of foregoing italics added.]

"Faithful to the foregoing overriding principles of *Greyhound,* we have consistently applied a liberal construction to the provisions of the act, permitting discovery and, while accepting the existence of privileges, have followed the strictures of Code of Civil Procedure section 2016, subdivision (b), wherein the Legislature has authorized discovery by deposition '. . . if the testimony sought appears *reasonably calculated to lead to the discovery of admissible evidence.*' On the issue of relevance, we were led to conclude in *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161 [84 Cal.Rptr. 718, 465 P.2d 854], that '. . . the relevance of the subject matter standard must be reasonably applied; in accordance with the *liberal* policies underlying the discovery procedures, *doubts* as to relevance *should generally be resolved in favor of permitting discovery.*' (P. 173, italics added.)" (20 Cal.3d 844, 866-868.)

The majority in *Britt* fails to appreciate the distinction between discovery and admissibility when it relies on its own gratuitous dictum in *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1], that unlimited medical discovery " 'might effectively deter many . . . patients from instituting [legitimate lawsuits] out of fear of opening up all past communications to discovery,' . . . that such a 'result would clearly be an intolerable and overbroad intrusion into the patient's privacy, not sufficiently limited to the legitimate state interest embodied in the provision, and would create opportunities for harassment and blackmail.' (2 Cal.3d at p. 435.)" (*Britt* v. *Superior Court, supra,* 20 Cal.3d at p. 863.)

The court cites no authority—textual or otherwise—to support such an assertion. Any lawyer or judge who has any first-hand familiarity with personal injury litigation knows that there is absolutely no factual basis for that statement. Literally tons of medical records of plaintiffs have been discovered by defense lawyers in personal injury cases since adoption of the Discovery Act in 1957. Yet, there is not one case or incident mentioned in *Lifschutz* or *Britt* to suggest that a single potential claimant *anywhere* at *any time* has been deterred from pursuing a legitimate lawsuit because of the possible disclosure of nonrelevant medical histories.[1]

---

[1]In fact, it is a matter of unassailable common knowledge that long before either *Lifschutz* or *Britt* was decided, the court filings in personal injury cases increased year after year after year.

If the past medical history is not relevant, it will not be admitted at trial. Indeed, the defense lawyer who has "discovered" the medical records is interested in finding those which are relevant and discarding those which are not.

On the other hand, *Britt* and *Lifschutz* have created a legal vehicle which clearly provides a concrete basis for "harassment and blackmail" of defendants! How does this come about? It is really quite simple.

First of all, to see the picture clearly we must clear the air by wiping away that intangible but seemingly omnipresent bucket of gold—"insurance." Any analysis of the fairness of our judicial procedures should be based upon the concept of equal treatment. Therefore, as applied to the case at bench, we should, in fairness, not assume that the real party in interest (defendant below) is either insured or not insured. All of that is irrelevant. We should simply assume that Dr. Hallendorf is suing Mr. Pflibsen for damages which Dr. Hallendorf claims were caused through the fault of Mr. Pflibsen.

Certainly, it is fair that the plaintiff be given the forum to make his claim. But it is not fair that the plaintiff be left as the sole judge of his own credibility. He may very well testify that his claim is limited to a precise part of his anatomy which he also declares has never been injured or treated before. Does that mean that the defendant, his attorney, and later the jury must accept plaintiff's word without question?[2] According to the *Britt* majority, relying on its own opinion in *Lifschutz,* the answer is yes. " *[T]he scope of the inquiry permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court.'* (Final italics added . . .)." (P. 864.)

If plaintiff is in fact telling the truth, his prior medical records will confirm him. No harm whatever has been done; in fact, the support of his credibility will enhance his settlement possibilities. On the other hand, if

---

[2]For example, assume plaintiff testifies that his only claimed injury involves the low back and that he had never been injured or treated for low back symptoms before the accident in question. Assume further that plaintiff has, however, been treated by a number of doctors in his life for "other things," even perhaps the mid-back, upper back, neck, etc. Under *Britt,* the defendant is foreclosed from testing the credibility of the plaintiff and is exposed to the very real possibility of incurring a judgment which includes disability or pain and suffering which is legally and morally attributable to an undisclosed prior injury or condition. The search for truth in any lawsuit must be carried out on a two-way street. In the context of personal injury litigation, unfortunately, *Britt* and *Lifschutz* have erected "One Way Only" signs which for all practical purposes keep defendants off the road.

the records disclose relevant, impeaching evidence, can anyone deny that justice has been done? Excluding the plaintiff, everyone involved including plaintiff's own lawyer will benefit from ascertaining the true facts *before trial.*

By the promulgation of its double standard in *Britt,* the court has also placed an additional costly and unnecessary burden on litigants and the trial courts. What had heretofore worked as a fair and efficient system of discovery has been converted into a highly disputive procedure, requiring tedious nit-picking by counsel and the court in the course of resolving objections to depositions and interrogatories and motions to quash discovery subpoenas. Coupled with the unsavory result of truth suppression, the result in *Britt*—now carried over to the case at bench—should be reexamined and quickly revoked.