[Civ. No. 50439. First Dist., Div. One. Mar. 23, 1981.]

CHARLES J. SIMEK, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY,
Respondent;
LINDA A. SIMEK, Real Party in Interest.

**COUNSEL**

Cary L. Dictor and Rapoport & Lewis for Petitioner.

No appearance for Respondent.

John R. Griffiths and Crist, Crist, Griffiths, Bryant, Schultz & Biorn for Real Party in Interest.

**OPINION**

GRODIN, J.—  The issue we confront is whether a parent who has been awarded physical custody of minor children in a marital dissolution proceeding may compel disclosure of records otherwise protected by the statutory psychotherapist-patient privilege (Evid. Code, § 1014) and by the physician-patient privilege (Evid. Code, § 994) in order to demonstrate that her former spouse suffers from emotional instability of such a nature that he should not be allowed visitation rights. In the

circumstances of this case our answer is negative, for the reasons which follow.

*Background of the Case.* Charles Simek, the petitioner in this proceeding, is the respondent in a dissolution proceeding brought by his wife Linda. During the hearing in August 1979 on the petition for dissolution, the court indicated that Linda was to have custody of their two children, Michelle, age eleven, and Allison, age six; and it directed that the parties were to work out a visitation schedule to be submitted to the court for its approval. If no agreement was reached, the matter was to be referred to the probation department.

By November 1979 the parties were unable to reach agreement, and the court ordered the visitation issue referred to the probation department. By April 1980 the parties decided to seek agreement upon a visitation program through the auspices of their family pediatrician, Dr. James I. Ball, and the court ordered the probation department's visitation-investigation terminated without prejudice. By June 1980, however, no agreement had been reached.

On June 3, 1980, Linda filed an order to show cause to obtain approval of a proposed interlocutory judgment and to terminate Charles' visitation rights "until such time as competent medical authority determine Respondent's capabilities of carrying on normal visitation." In support of the latter request, Linda submitted a declaration asserting that Charles had been a patient in a psychiatric ward two years previous for a "complete mental breakdown," and again a year previous for an attempted suicide; that he "needs medical advice and is not seeking same even though he has been advised by the family physician and by the family pediatrician to do so"; that he "harasses with abusive language, outbreaks of temper and extreme rage in front of the minor children wherein [Linda] has felt both physically and emotionally threatened"; that he uses "overly suggestive language and irresponsible behavior in front of the children"; and that "[a]t times the minor children have expressed fear at being with their father because of the dangerous way he drives and his use of alcohol to an excess, and his abusive and threatening language."

Attached to Linda's declaration was a letter from James I. Ball, M.D., the family pediatrician, stating that in "the last few weeks [the children] have become increasingly upset over their visits with their father ... by his outbursts of temper, erratic driving, unpredictable

behavior and frequent criticism of their mother" and that as a consequence "they are worried and unhappy when they must spend time with their father." The letter also stated, "I have recommend [sic] to Mr. Simek that he consult his psychiatrist with the hope that he may overcome his feelings of anger towards the girls['] mother so that his visits with his children will again be happy and rewarding ones."

Also attached to Linda's declaration was a letter from Donald A. St. Claire, M.D., who stated that Charles had been under his "professional care since 12-75." The letter confirms Charles' admissions to the psychiatric ward at Stanford Hospital, once in May of 1978 with a diagnosis of "psychotic personality disorder" and again in July of 1979 "with an overdose of tranquillizers." The letter asserts Dr. St. Claire's opinion, based upon subsequent contact with Charles and his family, that "he still suffers from the same degree of emotional disability and I feel it is an unequivocal detriment for his children to be exposed to him at this time."

On July 18, 1980, Charles filed a responsive declaration claiming, inter alia, that the proposed interlocutory judgment was incomplete because it failed to incorporate an alleged agreement between the parties that they would have joint *legal* custody over the children.

On August 12, 1980, Linda issued subpoenas duces tecum for the records of the psychiatrist, psychologist, physician, and hospital which had treated Charles. The subpoena directed to Charles' psychiatrist sought "all medical records, diagnoses, histories and other relevant data arising out of "the psychiatrist's treatment." The hospital was asked to produce "all medical records, test results, diagnoses and histories" arising out of Charles' admission to the psychiatric ward. The physician (Dr. St. Claire) was asked to produce similar data arising out of his treatment of Charles. And the psychologist was asked to produce "any and all records arising out of her administration of psychological tests" to Charles while a patient at Stanford Hospital.

On August 18, 1980, Charles moved to quash these subpoenas on the ground that the records were protected by the psychotherapist-patient and physician-patient privileges, and that the subpoenas were invalid because not limited in time or scope nor supported by a sufficient factual showing of good cause. At the same time, Charles moved for court approval of a visitation schedule which provided for two weekend visits

a month, a four-week visitation period during summers, and a detailed holiday visitation schedule.

On August 21, 1980, respondent court denied Charles' motion to quash and, by a protective order, modified the subpoenas duces tecum to require delivery of the records in sealed envelopes to the clerk of the court, pending inspection by the court at a hearing on the order to show cause, then set for the following week. Prior to the date set for hearing, Charles filed this petition for mandate and/or prohibition to restrain respondent court from inquiring into, or disclosing, the contents of the various records on the ground that they were statutorily privileged, and to compel respondent court to enter an order quashing the subpoenas. This court granted a stay, and after receipt of opposition to the petition granted an alternative writ.

*Discussion.* A patient has a statutory privilege to refuse to disclose, and to prevent another from disclosing, any confidential communication between the patient and a physician (Evid. Code, § 994), or between the patient and a psychotherapist (Evid. Code, § 1014), absent waiver (Evid. Code, § 912) or some statutory exception to the privilege. These privileges apply to discovery as well as to trial (Code Civ. Proc., § 2016, subd. (b)), and they preclude disclosure to the court as well as to the parties (Evid. Code, § 915, subd. (a); *Carlton* v. *Superior Court* (1968) 261 Cal.App.2d 282, 292-293 [67 Cal.Rptr. 568]; *Koshman* v. *Superior Court* (1980) 111 Cal.App.3d 294, 296, fn. 2 [168 Cal.Rptr. 558]).

The records at issue here appear to constitute "confidential communications" within the protection of sections 994 and 1014,[1] and Linda does not contend otherwise. That being the case, the privileges apply

---

[1]The term "confidential communication" is defined, in the case of the physician-patient privilege, to include "information, including information obtained by an examination of the patient, transmitted between a patient and his physician in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the physician is consulted, and includes a diagnosis made and the advice given by the physician in the course of that relationship." (Evid. Code, § 992.) The term is identically defined for purposes of the psychotherapist-patient privilege, with the substitution of "psychotherapist" for "physician." (Evid. Code, § 1012.) In both cases the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential. (Evid. Code, § 917.)

even if the records are relevant to a disputed issue, unless waived or subject to a statutory exception. (*Koshman* v. *Superior Court, supra*, 111 Cal.App.3d at p. 297.) Linda contends that Charles, by seeking "extensive" visitation rights and legal custody, has "tendered" his mental and emotional condition as an issue, thereby triggering application of the "patient-litigant" exception to both privileges. She invokes section 996, which provides that there is no statutory physician-patient privilege "as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by . . . the patient," and section 1016, which contains an equivalent preclusion of the psychotherapist-patient privilege "as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by . . . the patient."

The policy underlying the patient-litigant exception has been elucidated by the Supreme Court: "'The whole purpose of the . . . privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege. The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too.'" (*In re Lifschutz* (1970) 2 Cal.3d 415, 434 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1], quoting *City & County of S.F.* v. *Superior Court* (1951) 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418].) But, the court emphasized, the exception permits "only a limited inquiry into the confidences of the psychotherapist-patient relationship, compelling disclosure of only those matters directly relevant to the nature of the specific 'emotional or mental' condition which the patient has *voluntarily disclosed* and tendered in his pleadings or in answer to discovery inquiries." (*Id.*, at p. 431, italics added.) It "compels disclosure only in cases in which the *patient's own action initiates* the exposure, '*intrusion' into a patient's privacy remains essentially under the patient's control.*" (*Id.*, at p. 433, italics added.) Accordingly, the scope of the inquiry permitted "depends upon the nature of the injuries which the patient-litigant has himself brought before the court." (*Id.*, at p. 435.)

Thus, the patient-litigant exception has been applied, typically, to personal injury cases in which the plaintiff tenders his physical or emotional condition as an issue by seeking damages for what he contends are physical or emotional injuries. (*In re Lifschutz, supra*, 2 Cal.3d

415; *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330 [107 Cal.Rptr. 309, 508 P.2d 309]; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766]; *Hallendorf* v. *Superior Court* (1978) 85 Cal.App.3d 553 [149 Cal.Rptr. 564].) Tender has also been found where a mental patient sought release from a prison hospital contending he was no longer dangerous or violent. (*In re Cathey* (1961) 55 Cal.2d 679, 691 [12 Cal.Rptr. 762, 361 P.2d 426].) We find no precedent, however, which would support the claim which Linda asserts here.

Linda relies on *Little* v. *Superior Court* (1968) 260 Cal.App.2d 311 [67 Cal.Rptr. 77], but her reliance is misplaced. In that case the *trial* court ruled that in alleging that he is a "fit and proper person to be awarded custody of the minor child of the parties" a husband placed in issue his mental and emotional condition so as to permit discovery of otherwise privileged communications to a psychotherapist, but no review of that ruling was sought. The issue before the *appellate* court was whether the husband could be held in contempt for refusing to sign a consent authorizing a witness to answer certain questions, and the court ruled that under the circumstances of that case he could not. The applicability of the patient-litigant exception was not an issue before the appellate court, and was not discussed.

More pertinent to the issue presented here is the recent decision of the Third Appellate District in *Koshman* v. *Superior Court, supra,* 111 Cal.App.3d 294. In that case, a mother was awarded custody of two minor children pursuant to an interlocutory judgment of dissolution. Eight months later the father, claiming the mother was not a fit custodian, obtained an order to show cause re modification of custody and sought delivery of the mother's hospital records to the court in an attempt to show that she had been hospitalized for treatment of an overdose of narcotics. The court held that the records were privileged under section 994 and that the patient-litigant exception under section 996 did not apply. "In the most frequent application of section 996, an action for damages for personal injuries, the issues are 'tendered' by the plaintiff within the meaning of the section by plaintiff's factual allegations not by defendant's denial thereof which constitutes no more than a joinder of the issue. (*Carlton* v. *Superior Court* (1968) 261 Cal.App.2d 282, 289-290 . . . . ) The section 996 exception compels disclosure only in cases in which the patient's own action initiates the exposure . . . . Nothing the mother did here tendered her medical condition as an issue." (111 Cal.App.3d at p. 298. See also *Huelter* v. *Superior Court* (1978) 87 Cal.App.3d 544 [151 Cal.Rptr. 138] [wife seeking spousal

support on basis of alleged *physical* infirmity did not tender the issue of her *mental* condition so as to permit discovery of psychiatric records, despite husband's speculation that there might be a connection between her psychiatric treatment and her ability to seek or obtain employment].)

Here, as in *Koshman,* the patient has not "voluntarily disclosed and tendered" some "specific 'emotional or mental' condition" (cf. *In re Lifschutz, supra,* 2 Cal.3d at p. 431), on the basis of which an exception to the privilege can be carefully tailored so that the degree of intrusion upon the patient's privacy "remains essentially under the patient's control." (*Id.,* at p. 433.) If "tender" includes what Charles did here, there would be no logical limits (other than relevance) upon disclosure of anything which Charles may have communicated to his psychotherapist or physician.

The case for application of the privilege is even stronger here than in *Koshman.* First, this is a visitation, and not a custody case.[2] "The right of visitation is not equivalent to the right to custody and control." (*In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 858 [146 Cal.Rptr. 26].) The Legislature has declared it to be the "public policy of this state to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy." (Civ. Code, § 4600, subd. (a).) Accordingly, the statute mandates: "Reasonable visitation rights *shall* be awarded a parent unless it is shown that such visitation would be detrimental to the best interests of the child." (Civ. Code, § 4601, italics added.) The burden of proving detriment is upon the parent contesting visitation rights. (*Griffith* v. *Gibson* (1977) 73 Cal. App.3d 465, 475 [142 Cal.Rptr. 176].) And it has been said that "[i]n the absence of a provision expressly denying the right of visitation in a custody order a parent deprived of custody is entitled to reasonable visitation as a matter of natural right." (*Feist* v. *Feist* (1965) 236 Cal.App.2d 433, 436 [46 Cal.Rptr. 93].) It seems anomalous to suggest that a patient waives his privilege in confidential communications to physicians or psychiatrists simply by asserting his presumptive right of visitation.

---

[2]Linda argues, in this court, that Charles tendered his emotional state as an issue on July 18, 1980, when he complained (in a declaration filed that date) that the proposed interlocutory order did not reflect a prior agreement that he be awarded joint legal custody. It is clear from the record, however, that the subpoenas were sought, and subsequently defended, solely on the basis of their asserted relevance on the issue of visitation rights. Moreover, whatever the concept of legal custody entails (cf. *In re*

Second, the communications at issue here involve primarily the patient's relationship to a psychotherapist, and that relationship has been accorded special protection by the Legislature (see Legis. Committee com. to Evid. Code, § 1014) and by the courts (see *In re Lifschutz, supra,* 2 Cal.3d at pp. 431-432). It has been recognized that the intimate and sensitive nature of the communications called for by that relationship implicate constitutional as well as statutory rights of privacy. (*Ibid.*) In addition, the potential for disclosure of such communications might well "deter persons from seeking needed assistance, or from making the full disclosure upon which diagnosis and treatment depends." (Legis. Committee com. to Evid. Code, § 1014.) To exact waiver of a patient's privilege in the confidentiality of his communications to a psychotherapist as a price for asserting his right to visit his own child would pose problems of a particularly serious nature.

Nothing we have said here precludes consideration of Charles' emotional condition or behavior in relation to visitation rights on the basis of evidence *other* than privileged communications. Nor does it preclude, upon a proper showing, an order of mental examination pursuant to Code of Civil Procedure section 2032, subdivision (a). (Cf. *In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 817 [161 Cal.Rptr. 879].) An evaluation so obtained would not be subject to a claim of privilege (Evid. Code, § 1017), but could be protected from unwarranted disclosure to the adverse party or third persons. (Code Civ. Proc., § 2019, subd. (b)(1).) By these means, in a case of this sort, the best interests of the children could be adequately protected.

Let a writ of mandate issue directing the trial court to vacate its order of August 21, 1980, and enter a new order granting petitioner's motion to quash service of the subpoenas.

Elkington, Acting P. J., and Newsom, J., concurred.

---

*Marriage of Neal* (1979) 92 Cal.App.3d 834 [155 Cal.Rptr. 157]), we perceive no basis in precedent or policy for characterizing Charles' assertion as a tender. Dicta in *Koshman* to the effect that "there certainly are cases in which a patient/parent tenders the issue of his or her medical condition at a specific time by initiating an appropriate pleading" (111 Cal.App.3d at p. 298) has no application to these facts.