Filed 2/6/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| N.S., <br><br>     Petitioner, <br><br> v. <br><br> SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA, <br><br>     Respondent; <br><br> ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br>     Real Party in Interest. | A148694 <br><br> (Alameda County <br> Super. Ct. No. HJ0800915703) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 16, 2016, be modified as follows:

    1.  On page four, footnote four is modified to read:

> [4] The juvenile court's rationale was that the Agency alleged N.S. had not participated in services and N.S. contended she could not "perform and participate" based on a mental condition and thereby tendered the issue. This was not, however, the context in which the issue arose, and it is clear from the record as a whole, as well as from the briefing presented to this court, that the issue of N.S.'s mental condition related directly and narrowly to the question of whether she met the statutory criterion for eligibility under section 11403, subdivision (b)(5). It appears the genesis of the court's statement was counsel's characterization of the content of the letter as indicating N.S.'s inability to "participat[e] in any services." But the record shows that the proffered letter was "similar" to a letter from Chan submitted to the juvenile court in September 2015, which stated that N.S. had been receiving services for which she was, and continued to be, eligible under "criteria five, medical condition."

1

2. On page 10, in the first full paragraph after the last sentence "Although the letter was not entered into evidence, N.S.'s counsel told the court that it was similar to the letter attached to the September 2015 report," add as footnote six the following footnote, which will require renumbering of all subsequent footnotes:

> [6] As we observed in footnote 4, ante, the manner in which counsel asked the question engendered some confusion. She asked whether the letter stated that N.S.'s mental condition prevented her from "participating in any services." But the letter—assuming it is similar to Chan's previous letter, as was represented by N.S.'s counsel—does not state that N.S. is unable to participate in services; it states that N.S. had been receiving services since 2013 for which she was, and is, eligible under section 11403, subdivision (b)(5). The question of whether N.S. is entitled to continue receiving the benefits of the nonminor dependency provisions if she cannot participate in any services or comply with her case plan due to a mental condition is not before us. We therefore do not speak to that question, nor do we address whether N.S. might tender the issue of her mental condition if she did assert that position.

There is no change in the judgment.

Real Party in Interest's petition for rehearing is denied.


Dated: _____                              _____, P.J.

2

Filed 12/16/16 Certified for Publication 1/17/17 (order attached) (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| N.S.,<br><br>    Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF CALIFORNIA,<br>COUNTY OF ALAMEDA,<br><br>    Respondent;<br><br>ALAMEDA COUNTY SOCIAL<br>SERVICES AGENCY,<br><br>    Real Party in Interest. | A148694<br><br>(Alameda County<br>Super. Ct. No. HJ0800915703) |

Petitioner N.S. is a nonminor dependent of the juvenile court. At a hearing held after real party in interest Alameda County Social Services Agency (the Agency) recommended that N.S.'s dependency be dismissed, the Agency sought to have her psychotherapist testify as to confidential communications. The trial court overruled N.S.'s objection, ruling she had waived the psychotherapist-patient privilege by putting her mental state at issue. N.S. seeks a writ of mandate or prohibition prohibiting any inquiry concerning any of the psychotherapist's confidential communications with N.S. We shall grant the petition.

## I.   BACKGROUND

N.S. was removed from the home of her legal guardian when she was 11 years old and was placed in foster care. After she turned 18 in 2014, she remained under the

1

jurisdiction of the juvenile court as a nonminor dependent. (Welf. & Inst. Code,[1] § 11400, subd. (v).) The Agency's June 2014 status review report, which recommended that N.S. be declared a nonminor dependent, noted that N.S. had been diagnosed with posttraumatic stress disorder, attention-deficit/hyperactivity disorder, and depressive disorder.[2] She was participating in therapy and taking medication for these conditions. The report indicated that N.S. was eligible for the nonminor dependent program because she would be enrolled in high school or a GED program.

In a September 2015 addendum report (addendum report), the Agency took the position that N.S. qualified for extended foster care on the ground that a medical condition, i.e., her mental health diagnoses, prevented her from attending secondary, postsecondary, or vocational education, participating in an employment program, or working at least half time. (§ 11403, subd. (b).) She had been previously diagnosed with posttraumatic stress disorder, attention-deficit/hyperactivity disorder, and depressive disorder, and had mood swings, violent outbursts, and difficulty planning. The Agency recommended N.S. receive a supervised independent living plan. Attached to the addendum report was a June 2015 letter from N.S.'s therapist, Kristin Chan, stating that N.S. had been receiving psychotherapy services since 2010, and that she struggled with mental health and cognitive challenges that made it difficult for her to attend school or obtain employment.

The Agency changed its recommendation in February 2016. In a status review report, the Agency recommended that N.S.'s dependency be dismissed because her exact whereabouts were unknown and she had not participated in any services. She had left her placement in November 2015, and it was believed she was living at various friends' homes or on the streets. The social worker had met with her in August, September, and November 2015 and January 2016. At the January meeting, N.S. admitted she was using

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] This diagnosis occurred in 2013, when N.S. was still a minor.

2

methamphetamine. She was not interested in treatment referrals or placement. She was meeting with her therapist sporadically.

The Agency's April 2016 "Termination Report" noted that N.S.'s whereabouts remained unknown—although the social worker had met with her twice—and that N.S. had chosen not to avail herself of the placement services provided by the Agency. N.S. was abusing methamphetamines, living in parks and homeless encampments, and not attending to her mental health or medical treatment needs. She did not maintain regular contact with the social worker or her therapist. When N.S. went to the Agency's office in March to request assistance with transportation, she declined the social worker's offer of assistance in finding treatment and housing.

The report recounted that in April 2016, N.S. was picked up at a homeless encampment for a meeting with her support team. When N.S. arrived, she was not wearing shoes, she had lost a great deal of weight, her clothing was dirty, and it appeared she had not showered for some time. At the meeting N.S. was unable to focus, displayed moods ranging from angry to confused, had to be removed from the room several times to calm her anger and agitation, and fell asleep throughout the meeting because she had been using methamphetamines and had not slept in the past five days. When asked whether she wanted to remain in the extended foster care program, she "was not able to agree that she was willing to take part in the required program services at this time." According to the report, N.S. has been offered housing, substance abuse treatment support, and options to get back on track with services, but these efforts have produced no results.

At the contested hearing on the Agency's recommendation that the dependency be dismissed, the Agency called N.S. to testify during its case-in-chief. N.S. testified that she saw her therapist, Kristin Chan, every week. She acknowledged she was using methamphetamine and that the Agency had tried to get her to enter a treatment program, which she did not believe would help her. She had discussed with her therapist her fear of entering a detoxification facility. Her therapist had recently taken her to a hospital for a medical clearance so she could enter a drug program. Her understanding was that she

3

was eligible for extended foster care because there was a medical or mental reason she could not attend school or have a job. In addition, she stated, she could not have a job because she did not have glasses and could not see well and did not have identification.

The Agency called Chan as a witness. Chan testified that she had been seeing N.S. for therapy about once a week for the past year. Counsel asked whether Chan had written a letter indicating that N.S. had a diagnosis that prevented her from participating in services.[3] When Chan responded that she had, she was asked what the diagnosis was. At that point both she and N.S. asserted the psychotherapist-patient privilege. After briefing and argument, the juvenile court concluded the privilege did not apply because N.S. had put her mental state at issue. Accordingly, it ordered Chan to answer "pertinent questions" posed by the Agency.[4]

N.S. filed this writ petition seeking review of the order. We issued an alternative writ directing the juvenile court to vacate its order or show cause why it should not do so. The juvenile court did not vacate its order.

---

[3] This is a description of the letter by the County's counsel; the letter itself is not in the record.

[4] The juvenile court's rationale was that the Agency alleged N.S. had not participated in services and N.S. contended she could not "perform and participate" based on a mental condition and thereby tendered the issue. This was not, however, the context in which the issue arose, and it is clear from the record as a whole, as well as from the briefing presented to this court, that the issue of N.S.'s mental condition related directly and narrowly to the question of whether she met the statutory criterion for eligibility under section 11403, subdivision (b)(5). It appears the genesis of the court's erroneous statement was counsel's characterization of the content of the letter as addressing N.S.'s inability to "participat[e] in any services." But the record indicates that the proffered letter was "similar" to a letter from Chan submitted to the juvenile court in September 2015, which expressly referred to N.S. as qualifying for services under "criteria five, medical condition."

4

## II. DISCUSSION

### A. The Psychotherapist-Patient Privilege

Evidence Code section 1014 provides that a patient has a privilege to refuse to disclose, and to prevent another from disclosing, confidential communication between the patient and his or her psychotherapist. "Confidential communication" means "information . . . transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship." (Evid. Code, § 1012.) "It has been recognized that the intimate and sensitive nature of the communications called for by [the psychotherapist-patient] relationship implicate constitutional as well as statutory rights to privacy. [Citation.] In addition, the potential for disclosure of such communications might well 'deter persons from seeking needed assistance, or from making the full disclosure upon which diagnosis and treatment depends.' [Citation.]" (*Simek v. Superior Court* (1981) 117 Cal.App.3d 169, 177 (*Simek*).)

However, this privilege is not absolute: "There is no privilege under this article as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by," inter alia, the patient. (Evid. Code, § 1016.) This exception to the privilege applies when the patient's *own* factual allegations raise an issue, not when the patient does no more than joining an issue by denying allegations. (*Simek*, *supra*, 17 Cal.App.3d at pp. 175-177.) That is, "the patient-litigant exception of section 1016 of the Evidence Code compels disclosure of only those matters which the patient himself has chosen to reveal by tendering them in litigation." (*In re Lifschutz* (1970) 2 Cal.3d 415, 427; and see *Karen P. v. Superior Court* (2011) 200 Cal.App.4th 908, 913 [a "patient 'tenders the issue of his or her medical condition . . . by initiating an appropriate pleading . . . ' "].) "[T]he scope of the inquiry

5

permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court." (*Lifschutz*, 2 Cal.3d at p. 435.)

B. Extended Foster Care

"At the discretion of the juvenile court, a dependent minor who has a permanent plan of long-term foster care may continue to receive services as a nonminor dependent . . . when he or she turns 18 if the nonminor dependent has a transitional independent living case plan. [Citations.]" (*In re Aaron S.* (2015) 235 Cal.App.4th 507, 515, fn. omitted.) A nonminor may continue to receive assistance up to age 21 if, in addition, one or more of the following conditions is met: "(1) The nonminor is completing secondary education or a program leading to an equivalent credential. [¶] (2) The nonminor is enrolled in an institution which provides postsecondary or vocational education. [¶] (3) The nonminor is participating in a program or activity designed to promote, or remove barriers to employment. [¶] (4) The nonminor is employed for at least 80 hours per month. [¶] (5) The nonminor is incapable of doing any of the activities described in subparagraphs (1) to (4), inclusive, due to a medical condition, and that incapability is supported by regularly updated information in the case plan of the nonminor . . . ." (§§ 11403, subd. (b), 11400, subd. (v)(1).)

Section 11403 specifies procedures to be followed to maintain a nonminor's eligibility for extended foster care. Under subdivision (c), "[t]he social worker . . . shall verify and obtain assurances that the nonminor dependent continues to satisfy at least one of the conditions in subparagraphs (1) to (5), inclusive, of subdivision (b) at each six-month transitional independent living case plan update. The six-month case plan update shall certify the nonminor's eligibility pursuant to subdivision (b) for the next six-month period."

An "All County Letter No. 11-69" (the All County Letter) from the State Department of Social Services regarding the extended foster care statutory scheme (Stats.

6

2010, ch. 559, § 1 et seq., p. 2735 (Assem. Bill 12)),[5] explained that to satisfy the fifth eligibility criterion of section 11403, subdivision (b), two determinations must be made: first, the nonminor dependent must have a medical condition, and second, the condition must render the nonminor unable to do any of the activities described in subparagraphs (1) through (4).  A "medical condition" is "a physical or mental state" that limits the dependent's ability to participate in those activities.  The All-County Letter went on: 'Verification that a nonminor dependent cannot consistently meet the full requirements of subparagraph (1) to (4) can be satisfied by written documentation by a healthcare practitioner which explains that one of the reasons that the nonminor is unable to meet the criteria of subparagraphs (1) to (4) is because he or she has a 'medical condition' as defined in this subsection. . . .  [¶]  The nonminor dependent is deemed eligible for extended benefits under this section upon a verification of eligibility for such a condition. . . .  [¶]  The nonminor dependent, unless incapable, is responsible for obtaining and providing the social worker or probation officer with one of the following: (1) the written verification from a healthcare practitioner stating that the nonminor dependent has a medical condition and that he or she cannot consistently meet the full requirements of subparagraphs (1) to (4) . . . ."

If the juvenile court holds a hearing at which it considers terminating jurisdiction over a nonminor, a county welfare department must "[s]ubmit a report describing whether it is in the nonminor's best interests to remain under the court's dependency jurisdiction" and, if the agency recommends termination of jurisdiction, "submit documentation of the reasonable efforts made by the department to provide the nonminor with the assistance needed to meet or maintain eligibility as a nonminor dependent, as defined in paragraphs (1) to (5), inclusive, of subdivision (b) of Section 11403."  (§ 391, subd. (b)(2) & (3).)  The court must continue the dependency of a nonminor dependent who meets the statutory definition and who wishes to remain subject to dependency

---

[5]  We take judicial notice of the All County Letter dated October 13, 2011. (<http://www.dss.cahwnet.gov/lettersnotices/entres/getinfo/acl/2011/11-69.pdf> [as of Dec. 16, 2016].)  (Evid. Code, § 452, subd. (c).)

jurisdiction unless "the nonminor is not participating in a reasonable and appropriate transitional independent living case plan" or unless after reasonable and documented efforts, the nonminor cannot be located. (§ 391, subd. (c)(1)(B); *In re Nadia G.* (2013) 216 Cal.App.4th 1110, 1118.) The party seeking to terminate jurisdiction bears the burden of proof. (*In re Robert L.* (1998) 68 Cal.App.4th 789, 794.)

C. N.S. Did Not Tender the Issue of Her Mental Condition in the Litigation

The issue before us is a narrow one: On the question of whether N.S. continues to meet the eligibility requirement of section 11403, subdivision (b)(5), did N.S. tender the issue of her mental condition so as to waive the protection of the psychotherapist-patient privilege for her communications with Chan, including Chan's diagnosis? The Agency contends that N.S. did so when she (1) testified she believed she was eligible for extended foster care due to a medical condition and (2) tried to enter into evidence a letter written by Chan that purports to provide an update concerning her mental condition.

The court in *In re M.L.* (2012) 210 Cal.App.4th 1457, 1472-1476, considered the circumstances in which a party waives the psychotherapist-patient privilege. The county children and family services department there had filed a dependency petition on behalf of two children, alleging the mother's mental incapacity. (*Id*. at p. 1461.) The juvenile court ordered the release of the mother's previously-existing psychiatric records to the department and allowed them to be introduced into evidence. (*Ibid*.) The appellate court reversed the jurisdictional finding. (*Ibid*.) In doing so, the court observed: "[T]here can be no serious contention that merely by contesting the allegations against her, mother tendered the issue of her psychiatric condition, thus waiving the privilege attached to her confidential psychiatric records. Rather, the department tendered the issue of mother's mental health by filing the petition with the attached allegations; otherwise, the holder of the privilege would be placed in the proverbial 'Catch-22' whereby she would have to either admit the allegations against her, and suffer any attached consequences, or deny the allegations, thereby opening up her confidential records to disclosure and admissibility." (*Id*. at p. 1472.)

8

The court in *In re M.L.* distinguished *In re R.R.* (2010) 187 Cal.App.4th 1264, 1279, on the ground that in the dependency proceeding in *In re R.R.*, the father himself had placed before the court the issue of his drug use and was therefore not entitled to assert that recent medical records showing substance abuse were privileged. (*In re M.L.*, *supra*, 210 Cal.App.4th at pp. 1473-1474.) The court went on: "Here, contrary to *In re R.R.*, mother did not independently come to the department and declare her mental wellness. Rather, the department had already filed a petition alleging she had mental health issues, it came to mother to interview her regarding those allegations, and mother simply answered many of the department's questions. Mother was not reporting issues tangential to the substance of the petition in order to curry favor from the department; instead, she was simply responding to the allegations regarding her mental status already made by the department. . . . Thus, mother did not tender her mental health status as an issue such that she waived the confidentiality of her privileged psychotherapist-patient records." (*Id*. at p 1474.)

The reasoning of *In re M.L.* is persuasive here. The Agency had previously taken the position that N.S. was eligible for extended foster care under the fifth criterion of section 11043, subdivision (b). It later sought to terminate N.S.'s dependency on the ground that her whereabouts were unknown and she was not participating in services. During the Agency's case-in-chief, N.S. was asked to describe the purpose of the extended foster care program; she replied that she had been told there were five eligibility criteria, such as being in school or having a job; when asked if she had a job, she responded, "No. But I was told that I'm under the fifth criteria." When asked her understanding of the fifth criterion, she replied, "I was told that there's a medical or mental reason why I don't have to have a job or be in school. Plus I—because I can't have a job because I don't have my glasses. I can't even see."

This testimony, made in direct response to the Agency's questioning, cannot properly be construed to mean N.S. *herself* tendered the issue of her mental state. (See *In re Lifschutz*, *supra*, 2 Cal.3d at p. 427; *In re M.L.*, *supra*, 210 Cal.App.4th at pp. 1473-1474.) Exceptions to the psychotherapist-patient privilege are narrow, and we must

9

construe them liberally in favor of the patient. (*In re M.L.*, at p. 1474; *Lifschutz*, 2 Cal.3d at p. 437.) N.S. did no more than describe accurately her understanding of the basis for her continued dependency, consistent with the Agency's own earlier conclusion that her mental health condition prevented her from attending school, participating in an employment program, or working at least half-time. The Agency cannot compel a waiver of her psychotherapist-patient privilege simply by asking her the basis for *its own recommendation* that she remain in foster care.

We are equally unpersuaded by the Agency's suggestion that N.S. waived the privilege by seeking to admit her therapist's letter. Before Chan testified, the Agency's counsel told the court that she would question Chan about a letter she had prepared if the letter were admitted into evidence. N.S.'s counsel informed the court that Chan "[wrote] a letter in February and submitted another one yesterday to the County and she is here and [the Agency's counsel] and I are both in possession of the letters." The Agency called Chan as its witness. Agency counsel asked her whether she had written a letter indicating that N.S. had a diagnosis that prevented her from participating in any services, and Chan responded in the affirmative. Although the letter was not entered into evidence, N.S.'s counsel told the court that it was similar to the letter attached to the September 2015 report.

From this record, it appears that N.S. did no more than provide the documentation contemplated by the All-County Letter, which specifies that a healthcare practitioner may verify that a dependent cannot meet the requirements of subparagraphs (1) through (4) of section 11403, subdivision (b) because of a medical condition by providing written documentation. Nothing in the statutory scheme suggests that by providing the required verification, a dependent waives the psychotherapist-patient privilege. (See *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1092 [waiver of psychotherapist-patient privilege " 'must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and *likely consequences*.' [Citation.]") Indeed, the All-County Letter itself indicates that a dependent's privacy should be respected, stating: "To the extent possible, verification for all 5 conditions should be

10

obtained in a manner that respects the nonminor dependent's privacy . . . and without asking the nonminor to obtain any special documentation that may impinge on his/her privacy."

We conclude that N.S. has not tendered her mental health condition and therefore has not waived the psychotherapist-privilege as to her confidential communications with Chan, including Chan's diagnosis. (Evid. Code, § 1012.) In reaching this conclusion, we also reject the Agency's additional argument that the Agency and the court will be unable to verify the eligibility requirement without information from the therapist, particularly where, as here, it is the Agency's position that it is N.S.'s substance abuse, and not her mental health condition, that prevents her from meeting the criteria of section 11403, subdivisions (1)-(4). The Agency has provided no authority suggesting that its asserted need for such information obviates the privileged nature of N.S.'s communications with her therapist. This case is not akin to *In re Kristine W.* (2001) 94 Cal.App.4th 521, in which a minor's patient-psychotherapist privilege was permitted to be invaded for the limited purpose of gathering information to ensure minor was receiving appropriate services. Here, N.S. is not a minor and the purpose of the inquiry is not to ensure N.S. is receiving suitable services, but to garner additional information about the nature and effects of her mental condition. Further, as our high court has explained, "[P]rivileges under the Evidence Code have the effect of shielding otherwise relevant, and in some cases crucial, information from disclosure, based upon a legislative determination that the benefits served by the privilege outweigh the advantages that might be obtained in the absence of the privilege." (*People v. Gonzalez* (2013) 56 Cal.4th 353, 374-375.)[6]

The County also argues that Chan's testimony is "crucial for the court to make an informed determination regarding whether N.S. is complying with a reasonable and appropriate transitional independent living case plan," which is the ground alleged for

---

[6] N.S.'s counsel suggested to the juvenile court that if it needed more information on N.S.'s mental state, the court or the Agency could appoint an evaluator to assess her. We express no view on the propriety of such a procedure or any other mechanism that might be available to the Agency or the court.

terminating extended benefits under section 391, subdivision (c)(1)(B). We decline to address the argument because that question is not before us. The question, as defined by the County, is whether the trial court erred in ordering that "[N.S.]'s psychotherapist may testify regarding whether [N.S.] has a medical condition *that satisfies the nonminor dependent requirements pursuant to* [] *section 11403, subdivision (b)*." (Italics added.) The issue of N.S.'s eligibility for extended benefits with respect to other criteria—such as whether she meets the placement requirements for eligibility under section 11402 or whether she has failed to participate in her case plan—is distinct from the privilege issue that is before us.[7]

We emphasize the limited nature of our ruling here, which is restricted to the question of whether N.S. has put her mental condition at issue by responding to questions posed by the Agency in its case-in-chief with respect to her eligibility under section 11403, subdivision (b), and by submitting documentation in accordance with the All County Letter. We express no opinion on N.S.'s contention that, once a health care practitioner has provided written documentation that a medical condition limits a dependent's ability to participate in the other eligibility criteria, neither the Agency nor the court has discretion to conclude the nonminor does not have such a condition.

### III. DISPOSITION

The petition for writ of mandate is granted. The juvenile court is directed to vacate its June 7, 2016 order to the extent it requires Chan to testify as to confidential communications in response to questions relating to whether N.S. has a mental condition that satisfies the criterion of section 11403, subdivision (b)(5).

---

[7] This is consistent with N.S.'s position that the letter from Chan was provided pursuant to section 11403 subdivision (c), *viz.,* to verify that she continues to satisfy one of the criteria of subdivision (b). N.S. also argues that resolution of the issue of whether she failed to participate in services, "or other questions posed at a hearing held pursuant to Section 391 [] do[] not require any inquiry into N.S.'s confidential communications with her psychotherapist."

_____
Rivera, J.

We concur:


_____
Reardon, Acting P.J.


_____
Streeter, J.

Filed 1/17/17

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 4

N.S.,
Petitioner,
v.
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA,
Respondent;
ALAMEDA COUNTY SOCIAL SERVICES AGENCY,
Real PartY in Interest.

A148694
Alameda County No. HJ0800915703

BY THE COURT:

The written opinion which was filed on December 16, 2016, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Date: _____January 17, 2017_____      _____Ruvolo,_____ P.J.

1

| Trial Court: | Alameda County Superior Court |
|---|---|
| Trial Judge: | Honorable Willie Lott, Jr. |
| Counsel for Petitioner: | Bay Area Legal Aid, Whit A. Griffinger, Linnea Forsythe, Sheela Ramesh |
| Counsel for Petitioner in Juvenile Dependence Court | East Bay Children's Law Offices, Kristen Mateer, Rob Waring, Elizabeth Aleman |
| Counsel for Real Party in Interest: | Office of the County Counsel, Samantha Stonework-Hand |