Filed 8/23/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re NICOLE S., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>NICOLE S.,<br><br>         Defendant and Appellant. | A154443<br><br>(Alameda County<br>Super. Ct. No. HJ08-00915-03) |

Nicole S., a former nonminor dependent of the juvenile court (Welf. & Inst. Code, § 366.32), appeals from an order denying her motion for an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5 (section 1021.5).[1]  Nicole contends that the superior court committed an error of law by concluding section 1021.5 fees may not be awarded in a dependency case.  She seeks a fee award for work performed by her attorneys in a prior writ proceeding before this court, *N.S. v. Superior Court* (2016) 7 Cal.App.5th 713 (*N.S.*).  We conclude that section 1021.5 fees are not recoverable in a dependency proceeding and, therefore, affirm the order.

---

[1]  When referencing Code of Civil Procedure section 1021.5 we will usually employ the short-hand "section 1021.5," but all other statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

# I. BACKGROUND

## A. Nicole's Dependency Case

Nicole became a dependent of the juvenile court in 2008 when she was 13 years old. The Alameda County Social Services Agency (the Agency) provided reunification and family maintenance services to the family, but Nicole suffered from emotional and behavioral problems that made it unsafe for her to live at home. By 2010, Nicole's permanent plan was long-term foster care.

In January 2014, the month before Nicole turned 18, the juvenile court held a post-permanent plan review hearing. At the time, Nicole was enrolled in high school, had an IEP and was receiving mental health services. The Agency requested that the juvenile court continue to exercise jurisdiction over Nicole as a nonminor dependent. Under California's dependency system, "[a] dependent minor who turns 18 years of age and has a permanent plan of long-term foster care may, in the court's discretion, continue under the court's jurisdiction as a nonminor dependent. [Citations.] California enacted the current version of its nonminor dependency statutes to take advantage of increased federal funding for extended foster care." (*In re H.C.* (2017) 17 Cal.App.5th 1261, 1264.) To qualify for extended foster care services, the nonminor must satisfy at least one of five conditions set forth in section 11403, subdivision (b) (section 11403(b)). The first four conditions require the nonminor to participate in various education or employment activities, while the fifth applies if the "nonminor is incapable of doing any of [these activities] due to a medical condition, and that incapability is supported by regularly updated information in the case plan of the nonminor." (§ 11403(b)(1)–(5).)

In Nicole's case, the Agency recommended that the court find that Nicole qualified for extended services under section 11403(b)(1) because she had agreed that she would continue to attend high school or a GED program. The Agency also recommended that the court continue Nicole's placement in a Level 14 group home because of her pattern of unsafe behavior and inability to regulate her emotions even with the assistance of trained staff. The juvenile court adopted the Agency's recommendations and Nicole's dependency was extended for six months. In June 2014, the Agency reported that Nicole

2

was struggling. She had resumed using methamphetamine; she was on adult probation after failing to comply with juvenile probation; and she was not in compliance with her case plan. Nevertheless, the court followed the Agency's recommendation to continue the nonminor dependency.

In January 2015, shortly before Nicole turned 19, the court held another review hearing. At that time, Nicole was pregnant and living in an unapproved home with a boyfriend who had a history of selling illegal drugs and committing domestic violence against her; she was on probation after pleading guilty to a string of misdemeanors; she was not maintaining contact with the Agency; and she had not enrolled in a high school or GED program. Nevertheless, the Agency recommended that the court find Nicole qualified for extended services under section 11403(b)(5) because she suffered from a medical condition that prevented her from satisfying the education or work requirements set forth in section 11403(b). In support of this recommendation, the Agency reported that Nicole had a long history of mental health instability, and had previously been diagnosed with PTSD, ADHD, and a depressive disorder. The court adopted the Agency's recommendation and continued Nicole's dependency. By September, Nicole had resumed contact with the Agency and provided a letter from her therapist, which stated that her medical condition impeded her from participating in education or work activities. She had recently left her boyfriend because of domestic violence and the Agency was helping her locate housing.

In early 2016, around the time Nicole turned 20, the Agency recommended that the court dismiss Nicole's dependency. Since the last status review, the Agency had secured a residential placement for Nicole, where she could receive treatment for her addiction and mental health issues. However, Nicole left her placement, failed to participate in services and had only intermittent contact with the social worker. In April and May of 2016, the court held several sessions of a contested termination hearing. During the hearing, the Agency called Nicole and her therapist Ms. Chan as witnesses. Nicole testified that she believed she qualified for extended foster care services because there was a medical reason she could not attend school or secure a job. Chan testified she

3

had been treating Nicole for the past year and that she previously sent a letter to the Agency, which stated that Nicole had a diagnosis that prevented her from participating in education and employment related activities. County counsel asked Chan to disclose that diagnosis, but Nicole and Chan asserted the psychotherapist/patient privilege. (Evid. Code, § 1014.) At that point, the court postponed the hearing, so the parties could brief and argue the privilege issue.

On June 7, 2016, the juvenile court ordered Ms. Chan to answer County counsel's question about Nicole's diagnosis. The court found that the patient-litigant exception to the psychotherapist/patient privilege applied because Nicole had put her mental or emotional condition at issue. (See Evid. Code § 1016). However, the court stayed its ruling so that Nicole's appointed counsel could seek appellate review by extraordinary writ. That same day, her counsel filed notice of his intent to file a writ petition on Nicole's behalf.

In December 2016, a different panel of this court granted Nicole's petition for a writ of mandate in *N.S., supra,* 7 Cal.App.5th at p. 725. The *N.S.* court concluded that Nicole's relationship with Chan was protected by a privilege preventing the compelled disclosure of their confidential communications, and that the juvenile court erred by concluding that the patient-litigant exception to the privilege applied. The court reasoned that Nicole did not "put her mental condition at issue" by answering County counsel's questions at a contested hearing regarding her eligibility for services, or by submitting documentation of her condition in accordance with the County's formal policy requiring verification that a nonminor dependent satisfies the requirements of section 11403(b)(5). (*Ibid.*) Accordingly, the juvenile court was directed to vacate its order requiring Nicole's therapist to testify about confidential communications relating to whether Nicole has a mental condition that satisfies the criterion of section 11403(b)(5).[2]

---

[2] The *N.S.* court emphasized the "limited nature of [its] ruling," and explicitly declined to address Nicole's broad claim that the juvenile court and Agency had no discretion to dispute documentation from her health care practitioner that she had a

In February 2017, the Agency filed a request in Nicole's dependency case to terminate the juvenile court's dependency jurisdiction over Nicole on the ground that she had reached the age of 21.  (See § 303.)  On February 23, the juvenile court held a termination hearing.  Nicole was present and represented by her appointed trial counsel.  The court dismissed Nicole's case, finding she was no longer within the eligible age range for status as a nonminor dependent.

On March 22, 2017, the Clerk of the Court of Appeal issued a remittitur in the *N.S.* writ matter, certifying that the appellate court's decision had become final, and indicating that no costs would be awarded in the proceeding.

**B.  Nicole's Request for Attorney's fees**

On April 28, 2017, Nicole filed a motion in her dependency case, requesting an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5, which codifies the private attorney general doctrine exception to the rule that parties in civil litigation must pay their own attorney's fees.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1288 (*Maria P.*); *Trope v. Katz* (1995) 11 Cal.4th 274, 278–279.)

Section 1021.5 states:  "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ."

In her motion, Nicole requested that the court order the Agency to pay the attorney's fees of Bay Area Legal Aid (Bay Legal), whom Nicole had retained to represent her in the *N.S.* writ proceeding.  Nicole argued she was entitled to a fee award

---

medical condition limiting her ability to participate in the activities outlined in sub-sections (1) through (4) of section 11403(b). (*N.S., supra*, 7 Cal.App.5th at p. 721.)

because she enforced an important right that benefited nonminor dependents throughout the state. She further argued that her two attorneys had achieved an excellent result, entitling them to hourly fee rates of $600 and $400 respectively, as well as a multiplier of 1.3, for a total of $89,804 for work on the merits of the writ petition. Nicole also requested an additional $4,000 for work pursuing a fee award.

On the same day Nicole's attorney's fee motion was filed, one of her Bay Legal attorneys also filed a petition under section 388 to change, modify or set aside the February 2017 order terminating Nicole's dependency. The petition incorporated a request that the juvenile court either (1) modify its prior order to include an award of attorney's fees to Bay Legal, or (2) re-open the case for the sole purpose of considering an attorney's fee motion. According to the petition's allegations, this requested change was in Nicole's best interest because it would compensate her retained counsel for litigation that enforced an important right and conferred a substantial benefit on her and the public.

The Agency moved to strike the section 1021.5 motion and the section 388 petition, and it also opposed Bay Legal's fee request on the merits. The matter was re-assigned several times due to peremptory challenges by the parties and judicial recusals, ultimately landing in the general civil department of the Alameda County superior court where it was decided by Judge Brenda Harbin-Forte.

On March 29, 2018, the court filed a 27-page decision incorporating three related orders. First, the court granted the Agency's motion to strike the section 388 petition, finding it did not have jurisdiction to hear a petition filed after Nicole turned 21 and the court no longer had jurisdiction over her. Second, the court denied the Agency's motion to strike Nicole's attorney's fee motion, finding it did have jurisdiction to hear the post-judgment motion as ancillary to the underlying action. Third, the court denied Nicole's motion for attorney's fees, finding that section 1021.5 does not apply to dependency cases and that, even if it did, Bay Legal was not entitled to a fee award under the facts presented.

6

## II. DISCUSSION

Nicole appeals the order denying her attorney's fees under Code of Civil Procedure section 1021.5, and the Agency challenges the superior court's jurisdiction to enter such an order in the first instance.

### A. Jurisdiction and Standard of Review

The Agency contends the superior court lacked jurisdiction to adjudicate Nicole's attorney's fee motion. We must address this claim even though the Agency did not file an appeal because " '[l]ack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' " (*Totten v. Hill* (2007) 154 Cal.App.4th 40, 46.) As the lower court correctly explained, after Nicole turned 21 the juvenile court no longer had subject matter jurisdiction over her. (§ 303.) Moreover, there was no other basis to conclude that the court retained jurisdiction to entertain Bay Legal's section 388 petition. (See *In re A.S.* (2009) 174 Cal.App.4th 1511, 1515 [jurisdiction to adjudicate section 388 petition is conditioned on the existence of a juvenile court dependent].) However, the juvenile court did have ancillary jurisdiction to hear Nicole's motion for attorney's fees. (*Maria P., supra,* 43 Cal.3d at p. 1289.)

"A statutory fee motion under section 1021.5 does not create a new cause of action. Instead, the motion is 'a collateral matter, ancillary to the main cause.' [Citation.] Before a trial court may award fees, section 1021.5 requires that an action result in the enforcement of an important right and confer a substantial benefit on the public. Given these statutory requirements, [our Supreme Court has] stated that section 1021.5 motions may not be heard 'until the benefit is secure, in some cases after judgment is final.' [Citations.] Thus, the trial court retains jurisdiction under section 1021.5 to hear an application for fees after the judgment in the underlying action has become final." (*Maria P., supra,* 43 Cal.3d at p. 1289; see also *Katz v. Los Gatos-Saratoga Joint Union High School Dist.* (2004) 117 Cal.App.4th 47, 70.)

Without citing pertinent authority, the Agency takes the view that once the juvenile court lost subject matter jurisdiction over Nicole, it had no power to act in any

way whatsoever. We disagree. In *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 326 (*Barry*), our Supreme Court held that a court lacking subject matter jurisdiction over a claim may nevertheless adjudicate an anti-SLAPP motion and award fees under the anti-SLAPP statute. In finding that the trial court's lack of subject matter jurisdiction was *not* a bar to an award of attorney's fees and costs, the *Barry* court reasoned that a court may lack "the power to answer one type of question in a case," but "nonetheless have the power to answer another type of question." (*Ibid*.) Applying *Barry* leads to the same conclusion here.

Because the superior court did have jurisdiction to adjudicate the fee motion, we reach the merits of Nicole's appeal. The dispositive issue is whether the superior court erred by concluding that section 1021.5 does not apply in juvenile dependency cases. Nicole contends that the dependency law does not explicitly or implicitly bar juvenile courts from awarding fees under section 1021.5. The Agency counters that there is no statute or case authorizing an award of section 1021.5 fees in a dependency case precisely because such an award is impermissible. Amici curiae have filed briefs supporting the respective sides of this argument. Advokids, a non-profit organization that advocates for foster children in the child welfare system, has filed a brief in support of Nicole's appeal. California State Association of Counties (CSAC), a non-profit corporation that coordinates litigation on behalf of the 58 California counties, has filed a brief in support of the Agency.

As a general rule, a decision whether to award attorney's fees under section 1021.5 is reviewed for abuse of discretion. However, when, as here, the appeal turns on interpretations of statutory language and applicable case authority, which present questions of law, our standard of review is de novo. (*Save our Heritage Organisation of San Diego* (2017) 11 Cal.App.5th 154, 160; *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025–1026.)

**B. The Legal Framework**

"Dependency proceedings in the juvenile court are special proceedings governed by their own rules and statutes. [Citations.] 'Unless otherwise specified, the

requirements of the Civil Code and the Code of Civil Procedure do not apply.'
[Citations.]  However, in the absence of a dispositive provision in the Welfare and
Institutions Code, we may look to these requirements for guidance."  (*In re Josiah Z.*
(2005) 36 Cal.4th 664, 678–679 (*Josiah Z.*).)

In light of these principles, pertinent authority holds that a statute outside the
Welfare and Institutions Code can be applied in a dependency case if it is not explicitly
made inapplicable and if it is consistent with the overall purposes of the juvenile
dependency system.  (See e.g. *In re M.B.* (2011) 201 Cal.App.4th 1057, 1062–1063 [Civ.
Proc. Code, § 527.8 injunctions preventing harassment of employees]; *In re M.F.* (2008)
161 Cal.App.4th 673, 678–679 [Civ. Proc. Code, § 372 guardian ad litems or other
representatives for minors]; *In re Claudia E.* (2008) 163 Cal.App.4th 627, 636–637
[Civ. Proc. Code, § 1060 claims for declaratory relief]; *In re Mark B.* (2007)
149 Cal.App.4th 61, 76–77 [Civ. Proc. Code § 128.7 sanctions for frivolous filings].)

## C.  Section 1021.5 is Not Explicitly Made Inapplicable to Dependency Proceedings

By its terms, Code of Civil Procedure section 1021.5 authorizes a court to make a
fee award in "any action which has resulted in the enforcement of an important right
affecting the public interest" if other conditions are met.  Thus, on its face, this statute is
not made inapplicable to dependency proceedings.  Moreover, we do not find any
dependency statute or rule that explicitly precludes an attorney's fee award under
section 1021.5.

The Agency argues that section 1021.5 does not apply to dependency cases
because dependency cases are special proceedings and section 1021.5 is located in
Part 2 of the Code of Civil Procedure, which is titled "Of Civil Actions," instead of
Part 3, which is titled "Of Special Proceedings of a Civil Nature."  Some courts consider
the location of a statutory provision within the Code of Civil Procedure as indicative of
legislative intent regarding whether it should apply in a special proceeding.  (*In re Mark
B., supra*, 149 Cal.App.4th at pp. 76–80; *In re David H.* (2008) 165 Cal.App.4th 1626,
1640.)  However, this factor is not determinative; the pertinent substantive inquiry is

9

whether the statute in question is consistent with the purposes of juvenile dependency law.  (*Ibid.*)

Moreover, outside the dependency context, settled authority establishes that section 1021.5 can apply in a special proceeding.  (See e.g. *In re Head* (1986) 42 Cal.3d 223, 227 [fact that habeas corpus proceeding vindicating prisoner rights is a special proceeding of a criminal nature does not preclude application of section 1021.5]; *Best v. California Apprenticeship Counsel* (1987) 193 Cal.App.3d 1448, 1460–1461 [the term "action" in section 1021.5 includes special administrative proceedings that are "useful and necessary" to public interest litigation.].)  Thus, section 1021.5's placement in Part 2 of the Code of Civil Procedure does not preclude its application to dependency cases. We turn next to the question whether section 1021.5 is consistent with the purposes of the juvenile dependency system.

**D.  Section 1021.5 Is Not Consistent with Juvenile Dependency Law**

Code of Civil Procedure section 1021.5 encourages private lawsuits to enforce important public policies by providing substantial attorney's fees to successful litigants in such cases.  (*Maria P., supra,* 43 Cal.3d at p. 1288.)  The primary justification for this statute is that without a fee-shifting mechanism, there would be insufficient financial incentives to enforce important public policies.  (*Ibid.*; *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1211.)  Another unspoken justification for the doctrine is that "it is equitable to impose public interest attorney's fees on parties that have done something to adversely affect the public interest."  (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 954, 958 ["the party against whom [] fees are awarded must have done something, in good faith or not, that compromised public rights."].)

"The goal of dependency proceedings, both trial and appellate, is to safeguard the welfare of California's children.  'The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.'  [Citation.]  . . .  The best interests of the child are paramount. [Citations.]"  (*Josiah Z, supra*, 36 Cal.4th at p. 673.)  In nonminor dependency cases, the

10

focus remains on the best interests of the dependent. (*In re Aaron S.* (2015) 235 Cal.App.4th 507, 519.) "The Legislature intended that the nonminor dependent and the county welfare department 'shall work together to ensure the nonminor dependent's ongoing eligibility' for extended foster care. (§ 11403, subd. (a).)" (*In re M.W.* (2018) 26 Cal.App.5th 921, 928.) Even when dependency jurisdiction over a nonminor is terminated, the court retains general jurisdiction over the nonminor so that he or she may petition the court to resume dependency jurisdiction until the nonminor turns 21. (*Ibid.*)

We conclude that the financial incentives integral to section 1021.5 are unnecessary in the dependency context and could undermine protections built into the dependency scheme to serve the best interests of children and nonminor dependents by ensuring that all parties are represented by competent counsel. Parents, guardians, children and nonminor dependents who lack the financial resources to retain their own counsel are statutorily entitled to the appointment of counsel who are competent to handle dependency cases. (§ 317, §§ 317.5–317.6; Cal. Rules of Court, rule 5.534.)[3] And appointed trial counsel are statutorily entitled to reasonable compensation, "the amount of which shall be determined by the court, to be paid out of the general fund of the county." (§ 218.) The dependency scheme also provides for the appointment of separate appellate counsel. (§ 395, subd. (b)(1); rules 5.661 & 8.403.) Thus, as the trial court found, authorizing private participants in dependency proceedings to pursue section 1021.5 fees "would subvert the legislative plan for the provision and compensation" of competent counsel in dependency cases by providing a financial incentive to look outside that system for independent counsel.

Nicole contends that allowing section 1021.5 fees in dependency cases would not disrupt the dependency law's attorney compensation scheme, but rather would supplement that scheme by affording a potential funding source for legal representation that is not compensated under the dependency statutes and rules. Notably, Nicole

---

[3] All subsequent references to rules are to the California Rules of Court.

11

identifies only one example of dependency attorney work that she alleges is not compensated under the dependency statutes and rules:  a traditional mandamus action seeking interim review of a juvenile court's evidentiary ruling, such as the writ proceeding underlying this appeal.

Under Nicole's reading of the dependency statutes and rules, a court dependent is not entitled to appointed counsel to pursue extraordinary review of an interim juvenile court ruling for two related reasons:  (1) section 317 provides for the appointment and compensation of counsel for a dependent child or nonminor dependent, but only in proceedings conducted before the juvenile court; and (2) section 395, subdivision (b) (section 395(b)) provides that the court of appeal must appoint separate counsel to represent a dependent in appeals, but says nothing about extraordinary writ proceedings. Nicole posits that section 1021.5 fills this hole in the dependency scheme by affording dependents a potential fee recovery to entice private counsel to represent them in extraordinary writ proceedings that would not otherwise be filed.  We disagree with Nicole that there is any such hole in the statutory scheme that needs filling, as section 317 and section 395 both provide avenues to ensure that counsel is compensated for seeking interlocutory review of the sort pursued in this case.

First, Nicole's argument that section 317 does not authorize appointed trial counsel to pursue an extraordinary writ seeking interim appellate review focuses too narrowly on a single phrase in the first sentence of section 317, subdivision (d) (section 317(d)), which states that appointed trial counsel must represent their clients in all "proceedings before the juvenile court."  She ignores that section 317(d) also explicitly states that appointed counsel's representation "shall" continue until counsel is relieved by the court.  Where a writ proceeding is ancillary to a matter before the juvenile court, as with this challenge to the juvenile court's evidentiary ruling, we think part of representing the dependent in the proceeding before the juvenile court includes seeking interlocutory review of an evidentiary decision in an appropriate case.

Confirming this view, we note that standards designed to assure the competency of appointed counsel, such as those imposed through rules of court (§ 317, subd. (c)(5); rule

12

5.660), specify that attorneys in juvenile dependency matters should be capable of filing extraordinary writs. Notably, rule 5.660 defines "competent counsel" in this context to mean "an attorney who is a member in good standing of the State Bar of California, who has participated in training in the law of juvenile dependency, and who demonstrates adequate forensic skills, knowledge and comprehension of the statutory scheme, the purpose of the goals of dependency proceedings, and the specific statutes, rules of court, and cases relevant to such proceedings *and procedures for filing petitions for extraordinary writs*." (Rule 5.660(d)(1), italics added.)

Nicole contends that appointed counsel in dependency cases are expected to be familiar with extraordinary writ practice only so that they can handle the special "statutory" writs required by section 366.26, and that counsel are not authorized to file other traditional writs on behalf of their clients. But Nicole provides no reason why the absence of a provision explicitly addressing traditional writs should be taken to mean that trial counsel has no authority to file them. The pertinent rule of court quoted above does not distinguish between traditional and extraordinary writs. CSAC point out in their amicus brief that there are variations in the dependency representation programs adopted by counties to appoint and compensate trial counsel in dependency cases. In San Francisco, for example, the superior court permits hourly billing for preparing writs generally, making no distinction between statutory and non-statutory writ petitions. (S.F. Bar Assoc., Dependency Phase and Task Codes, p.1, <www.sfbar.org/forms/lawyerreferrals/taskandphasecodes.pdf>.)

Furthermore, other provisions of section 317 impose special duties and obligations on a dependent child's appointed counsel that are commensurate with his or her primary responsibility to "advocate for the protection, safety, and physical and emotional well-being of the child or nonminor dependent." (§ 317, subd. (c)(2).) These duties include conducting investigations, making recommendations to the court regarding the dependent's welfare, and "participat[ing] further in the proceedings to the degree necessary to adequately represent the child." (§ 317, subd. (e)(1).) The Legislature makes explicit that the duties of a dependent's appointed trial counsel extend "beyond the

13

scope of the juvenile proceeding," requiring counsel to advise the court of "other interests of the child that may need to be protected by the institution of other administrative or judicial proceedings." (§ 317, subd. (e)(3); see also § 317.6, subd. (a)(4) ["rules of court regarding the appointment of competent counsel in dependency proceedings" should address "[p]rocedures for informing the court of any interests of the minor that may need to be protected in other proceedings"].) In this regard, rule 5.660(g) provides that "until juvenile court jurisdiction is terminated, . . . . [¶] . . . [¶] . . . [i]f the attorney for the child . . . learns of any such interest or right, the attorney . . . must notify the court immediately and seek instructions from the court as to any appropriate procedures to follow." (Rule 5.660(g).) Where further action is required to protect or pursue the interests or rights of the dependent child, the court must take steps to ensure that appointed counsel acts to protect those rights by, for example, "authoriz[ing] and direct[ing] the child's attorney to initiate and pursue appropriate action." (Rule 5.660(g)(3)(B).) In light of this directive, we do not share Nicole's concern about the absence of a statute explicitly authorizing appointed counsel to file an interim writ.

Crucially, Nicole cites no case, statute or rule questioning the authority of appointed trial counsel in a dependency proceeding to file a traditional writ. Indisputably, "traditional writ relief is available to remedy errors" in dependency cases. (*In re Matthew P*. (1999) 71 Cal.App.4th 841, 844; see also *In re Pablo D*. (1998) 67 Cal.App.4th 759, 671.) Moreover, in their amicus brief, CSAC cite multiple examples when trial counsel pursued such relief on behalf of a party in a dependency case. (See *Johnny W. v. Superior Court* (2017) 9 Cal.App.5th 559 [father's writ of mandate challenging order denying motion to disqualify judge]; *In re Jonathan M*. (1997) 53 Cal.App.4th 1234 [dependent child's writ of mandate challenging visitation order]; *In re Jeannette H*. (1990) 225 Cal.App.3d 25 [Agency writ of mandate challenging pretrial order]; *Taylor M. v. Superior Court* (2003) 106 Cal.App.4th 97 [former dependent child's writ of mandate challenging dismissal of petition]; *Joe B. v. Superior Court* (2002) 99 Cal.App.4th 23 [father's writ of mandate challenging the denial of reunification services].)

14

Thus, we find nothing in section 317 or any other authority that precludes appointed trial counsel from filing an interim writ when that course of action would further the best interests of the dependent. For similar reasons, we are unpersuaded by the second part of Nicole's argument, which posits that appointed appellate counsel are unavailable to pursue interim writs in dependency cases. Because section 317 addresses the duties and obligations of appointed trial counsel, that specific provision does not require the appointment of appellate counsel in dependency cases or address the obligations of such appellate counsel. (*In re Zeth S.* (2003) 31 Cal.4th 396, 414–415.) However, if appointed trial counsel believes that the interests of the dependent child or nonminor dependent would be better served by having separate appellate counsel pursue an interim writ, the appellate court stands ready to appoint such an attorney at public expense.

When a dependent child is an appellant, section 395(b) requires the appointment of separate counsel on appeal. As Nicole points out, this statute does not explicitly address writ proceedings, but it does provide that in "any appellate proceeding," in which "the child is not an appellant, the court of appeal shall appoint separate counsel for the child if the court of appeal determines, after considering the recommendation of the trial counsel or guardian ad litem appointed for the child . . . that appointment of counsel would benefit the child." (§ 395(b)(1); see also rules 5.661 & 5.662.)[4] In seeking an extraordinary writ, a juvenile dependent is not an "appellant" but is participating in an "appellate proceeding," so the appellate court should appoint counsel if it encounters a case where doing so would benefit the child.

---

[4] To receive federal funding, a state's dependency program must "ensure appointment of a specially trained guardian ad litem in every judicial proceeding involving an abused or neglected child." (*Josiah Z., supra*, 36 Cal.4th at p. 679.) In California, the responsibilities of this Child Abuse Prevention and Treatment Act (CAPTA) guardian include making recommendations to the court regarding the best interests of the child, such as whether to appoint appellate counsel. (Rule 5.662.) Trial counsel usually serves also as CAPTA guardian. (Rule 5.662(c).)

15

Nicole assumes that the phrase "any appellate proceeding" in section 395(b) does not include an extraordinary writ proceeding seeking interim appellate review of a juvenile court order. We see no reason for reading such a restriction into the statute absent authority for doing so. In a different context, our Supreme Court concluded that the term "appellate jurisdiction" refers to the power of "a reviewing court to correct error in a trial court proceeding . . . in the procedural context of a direct appeal or a writ petition." (*Leone v. Medical Board* (2000) 22 Cal.4th 660, 666.) Moreover, a rule of court specific to writ proceedings before the court of appeal expressly assumes that parties in a juvenile dependency case are entitled to court-appointed counsel. Rule 8.493 governs cost awards in writ proceedings "[e]xcept in a criminal or juvenile or other proceeding in which a party is entitled to court-appointed counsel."

We recognize that trial counsel's ability to file a writ petition may make appointment of separate appellate counsel unnecessary, but we conclude that in an appropriate case section 395(b) offers an independent route for the court of appeal to appoint counsel for a juvenile dependent seeking an extraordinary writ. Because appointed appellate counsel play a crucial role in fulfilling the statutory mandate to protect the best interests of dependent children, they are compensated for their work. (Cf. *Cunningham v. Superior Court* (1986) 177 Cal.App.3d 336 [forced appointment of attorneys without compensation would violate equal protection].)[5] Indeed, appellate specialists handling juvenile dependency cases routinely appear pursuant to court of appeal appointment and are compensated with public funds for their efforts.

The facts of this case expose no gaps in this comprehensive statutory scheme for appointing and compensating counsel in juvenile dependency cases. Nicole's appointed

---

[5] This situation should be distinguished from independent counsel appointed by the juvenile court to represent a dependent in a proceeding outside the dependency system, such as a potential tort action. (See *In re Nicole H.* (2011) 201 Cal.App.4th 388.) In that context, counsel serve on a pro bono or contingency fee basis because their services fall outside the dependency law's attorney compensation scheme. (*Ibid.;* see also *San Diego County Dept of Social Services v. Superior Court* (2005) 134 Cal.App.4th 761, 767.) Our conclusions in this appeal do not apply to these independent counsel.

trial counsel obtained a stay of the juvenile court's evidentiary ruling regarding the inapplicability of the psychotherapist/patient privilege so that he could obtain appellate review by seeking a writ. Counsel never informed the juvenile court that he could not or would not handle that appellate proceeding. Nor did he request that the court of appeal appoint separate counsel to represent Nicole in the writ proceeding. Instead, according to a declaration filed in support of the attorney's fee motion, Nicole's counsel contacted Bay Legal to request assistance for Nicole after concluding that his own agency lacked the resources to handle the writ matter. Then Bay Legal and Nicole entered into an agreement that Bay Legal would represent Nicole in the writ proceeding "pro bono." Of course, Nicole had the right to retain outside counsel of her choice (§ 349, subd. (b)), but her exercise of that right is not indicative of a hole in the dependency statute's attorney compensation scheme.

By separate argument, Nicole contends that regardless whether there is a hole in the dependency law's attorney compensation scheme, supplementing that scheme by allowing section 1021.5 fee awards would be consistent with the law's paramount purpose of furthering the best interests of nonminor dependents. Nicole posits that her experience in this case illustrates that permitting a fee award as an incentive to attorneys like Bay Legal will further the best interests of other nonminor dependents who face similar obstacles that threaten their right to receive extended foster care services.

We do not doubt that pro bono counsel can play a valuable role in dependency cases. But the question we face here is whether offering the financial incentive of a section 1021.5 fee award to privately retained counsel in dependency cases would further the best interests of dependents or otherwise be consistent with California's dependency scheme. Section 1021.5 encourages private parties to pursue public interest litigation by permitting an award of fees against an "opposing party." (§ 1021.5; see also *Nestande v. Watson* (2003) 111 Cal.App.4th 232, 242 ["The incentive the Legislature has chosen to encourage public interest litigation is to permit an award of fees against the losing parties, not to authorize a subsidy out of the public treasury"].) We conclude that this impetus is antithetical to the dependency law's goal of protecting children and nonminor dependents

17

through a "cooperative effort" between the social services agency and the juvenile court, who work together to administer the law. (*In re M.C.* (2011) 199 Cal.App.4th 784, 810; *In re Ashley M.* (2003) 114 Cal.App.4th 1, 6–8.)

By legislative mandate, the social services agency must play a hybrid role, exercising executive and judicial functions. (*In re M.C.*, *supra,* 199 Cal.App.4th at p. 810; *In re Ashley M., supra,* 114 Cal.App.4th at pp. 6–8.) First, when the agency files a petition and appears at hearings where it bears the burden of proof, it performs an executive function, acting as a prosecuting arm of the state. (*M.C.,* at p. 810 [and cases].) But unlike public interest litigation that must be initiated by a private party, the agency has a statutory duty to initiate dependency proceedings. Second, when the social services agency provides welfare services to dependents and their families, it also acts as an administrative agency of the executive branch. (*Ibid.*) Outside the dependency context, our Supreme Court has held that an administrative agency can be an "opposing party" under section 1021.5, when it is "responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation." (*Connerly v. State Personal Bd.* (2006) 37 Cal.4th 1169, 1176–1177.). But when the social services agency provides dependency services, it is the juvenile court that " 'maintains ultimate control over the delivery of services through its authority to decide' " whether appropriate and sufficient services have been offered. (*M.C.,* at p. 810.) A third essential function of the social services agency is to provide information to the juvenile court by filing reports and making recommendations. (*M.C., supra*, 199 Cal.App.4th at p. 810.) In performing these statutory duties, "the social services agency acts as an impartial arm of the court in assisting the court to carry out the Juvenile Court Law." (*Ibid.*)

Thus, the roles played by social services agencies in dependency proceedings are hardly analogous to that of an opposing party in public interest litigation. Applying section 1021.5 in juvenile dependency cases could seriously impede the agency's ability to perform its statutorily-mandated functions by exposing it to potentially significant financial liability. Moreover, as evidenced by cases previously cited, interim writ

18

proceedings in dependency cases typically challenge decisions that the court itself has made.  Here, for example, Nicole initiated a writ petition to challenge the court's evidentiary decision.  While the agency functions as an arm of the court, the opposite is not true, which highlights another reason why it would be inaccurate to cast the agency as an opposing party within the meaning of section 1021.5.  Finding no indication that the Legislature intended such anomalies, we cannot find that authorizing section 1021.5 fee awards in dependency cases would be consistent with the best interests of California's dependent children and nonminor dependents.

For all these reasons, we agree with the superior court that section 1021.5 does not apply in dependency cases.

## III.  DISPOSITION

The order denying Nicole's motion for attorney's fees is affirmed.

_____
TUCHER, J.

I CONCUR:


_____
BROWN, J.

**Streeter, Acting P. J., concurring and dissenting.**

The majority takes the view that because "[p]arents, guardians, children and nonminor dependents who lack the financial resources to retain their own counsel are statutorily entitled to" appointed counsel, "authorizing private participants in dependency proceedings to pursue [Code Civ. Proc.] section 1021.5 fees 'would subvert the legislative plan for the provision and compensation' of competent counsel in dependency cases by providing a financial incentive to look outside that system for independent counsel."

Respectfully, I do not agree. Fee awards under Code of Civil Procedure section 1021.5 (section 1021.5) are reserved for cases having wide-ranging public impact. Far from "subvert[ing]" the system of appointed counsel in dependency cases, endorsing the availability of section 1021.5 fees in this case would enhance the system of compensation for appointed dependency counsel, not undermine it.

A line of argument similar to the one the majority embraces here was made in *In re Head* (1986) 42 Cal.3d 223, where the respondent agency argued that "the existence of Penal Code section 987.2, which authorizes the reimbursement of counsel assigned to represent defendants in criminal proceedings, suggests that the Legislature has insured that habeas corpus petitioners will be represented by appointed counsel when appropriate." (*Id.* at p. 232, fn 9.) Our Supreme Court rejected the argument, pointing out that "Section 1021.5 . . . exists to encourage the initiation of proceedings that might not otherwise have been brought to enforce important rights." (*In re Head, supra,* at p. 232, fn. 9.)

The majority's premise—that section 1021.5 would be injurious to what it views as a self-contained system of compensation for indigent litigants in dependency proceedings—is simply not accurate. Dependency practice is a specialty field, requiring unique competence, and the statutory compensation system for appointed counsel within the field rightly demands that lawyers who receive such appointments possess the necessary expertise. As I see it, the availability of section 1021.5 fees would promote, not detract from, that objective. Sometimes issues arise that well-trained dependency

1

attorneys do not encounter with any frequency or do not have the resources to pursue. In those situations, section 1021.5 ought to be available as a "carrot" to attract talent from other fields.

Whether there is some sort of "gap" in the available appointive compensation scheme for dependency counsel seems beside the point. The issue—which is equally true in the related statutory scheme for representation of indigent clients in criminal cases—is that the amount of available compensation lags so far behind what lawyers can earn in other, adjacent fields, that there is sometimes a built-in disincentive to do anything for a client beyond what is sure to be compensable. It may not be realistic to "level the playing field" between the type of representation a rich person gets and a poor person gets, but the potential availability of section 1021.5 fees is at least a nod in that direction.

I also fail to see how applying section 1021.5 could possibly be injurious to our appointive counsel system in dependency. What happened here is illustrative. Appointed counsel in the trial court, Mr. Waring and his agency, say they lacked the resources to litigate a mandamus action. But as Mr. Waring explained, absent mandamus, Nicole would have been forced to either waive the psychotherapist-patient privilege or leave the dependency system and thus lose her eligibility for Extended Foster Care. So they did what any competent lawyer would have done, in any field, to protect the interests of a client—they sought outside help.

That should be encouraged, since one of the most basic rules of professional conduct is that an attorney must recognize his or her limitations and take steps to find whatever additional help a client may need, if the attorney cannot deliver it alone. (Rules Prof. Conduct, rule 1.1(c)(i) & (iii).) Given this ethical imperative, I think it is misguided to say we should shrink from applying a statute that creates a "financial incentive to look outside [the dependency compensation] system for independent counsel." The very idea runs contrary to maximum promotion of attorney competence under the Rules of Professional Responsibility.

The majority suggests that by making section 1021.5 available we may be putting social service agencies in an adversarial posture at odds with their unique role in the

dependency system.  I do not see why that would be the case any more than it is already the case.  It is true that the hybrid role of a social service agency requires that it serve as an impartial arm of the juvenile court (*In re B.D.* (2019) 35 Cal.App.5th 803, 821–822), but that hybrid role can sometimes have an adversarial component.  As counsel for Bay Legal pointed out at oral argument, the specific context before us—a dispute over Nicole's continued eligibility for non-minor dependent status—is a good example of a situation where the agency's role can take on an adversarial cast.

To the extent the majority is concerned that section 1021.5 could expose social service agencies to financially burdensome fee awards, in no other sector of public administration has a de facto immunity from section 1021.5 been recognized on fiscal protection grounds.  It is not the case, in any event, that we are dealing with financial risk outside of an agency's control.  One purpose of section 1021.5 is to incentivize a public entity, faced with a challenge to a legal position it has taken on an issue of broad public significance, to reexamine that position if presented with potentially meritorious arguments in favor of doing so, without insisting upon a court order.  I see the statute as an important tool to force agency accountability, not a drain on the public fisc.

While I part ways with the majority on the threshold issue of whether section 1021.5 applies in dependency cases, I nonetheless concur with the result it reaches.  I am not persuaded that "a significant benefit . . . has been conferred [in this case] on the general public or a large class of persons." (§ 1021.5.)  Simply obtaining a published appellate opinion does not meet this standard.  In this case, we decided for Nicole on narrow, fact-specific grounds, emphasizing "the limited nature of our ruling[.]" (*N.S. v. Superior Court* (2016) 7 Cal.App.5th 713, 725.)  I applaud the fine work Bay Legal did for Nicole, but I cannot say the relief it obtained for her is of benefit to multitudes, which is what it takes to earn a section 1021.5 fee award.

_____
STREETER, Acting P. J.

3

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Brenda Fay Harbin-Forte |
| Counsel for Appellant: | Bay Area Legal Aid, Robert P. Capistrano, Fawn Jade Koor, Rebekah Evenson |
| Amicus Curiae on behalf of Appellant: | AvoKids, Janet G. Sherwood |
| Counsel for Respondent: | County of Alameda, Donna R. Ziegler, County Counsel, Samantha N. Stonework-Hand, Deputy County Counsel |
| Amicus Curiae on behalf of Respondent: | California State Association of Counties, Jennifer Henning; San Francisco City Attorney, Dennis J. Herrera, Kimiko Burton, Lead Attorney, Elizabeth M. Muniz, Deputy City Attorney |